UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE WENDEL, | Case No. 3:19-cv-1165 |
| *Plaintiff*, | |
| -against- | |
| | **COMPLAINT** |
| PROMETIC BIOTHERAPEUTICS, INC., | **JULY 29, 2019** |
| *Defendant*. | |

**COMPLAINT**

I.      **INTRODUCTION**

Plaintiff, Bruce Wendel ("Plaintiff" or "Mr. Wendel"), by his counsel, for his Complaint

("Complaint") against Defendant alleges on personal knowledge as to matters relating to himself

and on information and belief as to all other matters except as noted and except for allegations of

fraud needing to be on personal knowledge, as follows:

II.     **NATURE OF THIS ACTION**

1.      The Complaint seeks declaratory, monetary, and related relief for Defendant's

breach of contract and violation of Connecticut's wage statute.  Plaintiff and Defendant had an

employment contract for a definite term, ending March 31, 2020.  Defendant purported to

terminate Plaintiff as of May 3, 2019, but based on the valid notice provision of the contract his

employment is deemed to terminate on March 31, 2020.  That longevity entitled Plaintiff to

significant additional payments, which Defendant has refused to pay.

2.      Defendant took this action in derogation of the contract and in breach of its

obligation of good faith and fair dealing in an effort to avoid a provision of that contract that

guaranteed Plaintiff long term incentive benefits.  As a result of this breach, Plaintiff is due no

less than the contractual value of $1,150,000, plus pre- and post-judgment interest at the

applicable rate and other relief requested below.

3.      Defendant's actions also affected Plaintiff's compensation under a confidential

program in which he was specifically invited to participate and receive $120,000, and insurance

premiums of over $15,000.  Plaintiff is due these amounts plus pre- and post-judgment interest at

the applicable rate.

4.      Defendant's actions in failing to pay Plaintiff the wages and/or fringe benefits due

him additionally violated Conn. Gen. Stat. § 31-72, pursuant to which Plaintiff is entitled to

twice the full amount of wages owed him, plus costs and attorneys' fees.

## III.    THE PARTIES

5.      At all times relevant to this action, including through the present, Plaintiff Bruce

Wendel is an individual residing and with his domicile located at 70 Eleven O'Clock Rd,

Weston, Connecticut.

6.      Defendant Prometic Biotherapeutics, Inc. ("Defendant" or "Prometic") is a

corporation organized and existing under the laws of the State of Delaware, with its principal

place of business at 1330 Piccard Drive, Suite 201, Rockville, Maryland 20850.

## IV.    JURISDICTION

7.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1), as the Plaintiff and Defendant are citizens of different states, and the amount in

controversy exclusive of interest and costs exceeds $75,000.

8.      Defendant is subject to personal jurisdiction in Connecticut for at least the

following reasons:  The employment contract at issue was made and entered into in this state.

The contract was to be performed in this state.  The term sheet provided that the "location" of the

employment was "Connecticut, USA".  Defendant knew that Plaintiff lived in Connecticut, and

that Plaintiff would be performing his duties in and from Connecticut.  Plaintiff did perform the

duties called for under the contract at issue in and from Connecticut.  In an action that Plaintiff

commenced in the Southern District of New York and that Defendant moved to dismiss for lack

of personal jurisdiction, Defendant admitted "Mr. Wendel was an employee who worked from

home in Connecticut".  (Wendel v. Prometic Biotherapeutics, Inc., 1:19-cv-06142-AKH

(S.D.N.Y.), ECF 10, ¶ 10.)  Defendant provided Plaintiff with Prometic business cards that have

Plaintiff's Connecticut address.  Defendant withheld Connecticut taxes from Plaintiff's salary

checks.  Defendant addressed the May 3, 2019 termination letter referenced in paragraph 21

below to Plaintiff in Connecticut, and mailed at least two checks to Defendant in Connecticut.

See Conn. Gen. Stat. § 33-929(f)(1).

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial

part of the events or omissions giving rise to the claim occurred in the District of Connecticut.

**V.   FACTS COMMON TO ALL CAUSES OF ACTION**

10.      Plaintiff and Defendant entered into an employment contract with each other

dated as of April 25, 2018 ("Employment Contract").

11.      The Employment Contract was "for the period starting on March 19, 2018 and

ending on March 31, 2020" (§ 3.2).  Plaintiff was hired as Chief Business Development Officer.

12.      The Employment Contract provides that Plaintiff "will be eligible to participate in

the Long-Term Incentive Program, the details of which are governed by the Compensation

Policy.  The annual grant value under the Program shall be US $575,000 per annum" (§ 5.3).

13.      In furtherance of this provision, Defendant made "the formal commitment that

you [Mr. Wendel] will have the opportunity to access the full value of your LTI [long-term

incentive] grants as long as you complete your 2-year contract."  This commitment was in

writing, in an email from Martin Leclerc, Defendant's Chief Talent Officer, to Plaintiff, dated

3

"Thursday, April 26, 2018 11:05 AM," and was in response to Plaintiff's question, "since long

term RSUs [restricted stock units] are only vested after 3 years, how would that fit with my 2-

year contract?"

14.     In short, Defendant made a binding contractual commitment to pay Mr. Wendel

under its Long-Term Incentive Program, at a grant value of $575,000 per annum, upon the

completion of his two-year contract notwithstanding any provision in Defendant's compensation

policy to the contrary.

15.     On February 2, 2019, Prometic's then-CEO selected Mr. Wendel as a participant

in a confidential program pursuant to which he was entitled to $120,000 by no later than January

2020.

16.     On April 23, 2019, Prometic's new CEO invited Plaintiff to a "leadership team

meeting."  On the agenda for that meeting was an action item to "[e]stablish core leadership team

of five direct reports" to the CEO, including Plaintiff, "Bruce W".

17.     On April 26-27, 2019, Prometic's same new CEO relayed to Plaintiff that

Prometic wanted Plaintiff "to remain in position until end of contract in March 2020."

18.     In connection with that exchange, Plaintiff raised with Defendant its "formal

commitment" to pay him the "full value" of his long-term incentive grants.  Rather than

acknowledging its liability, Defendant instead questioned "why" it had made the commitment.

19.     Recognizing that it owed duties to Plaintiff as a result of its "formal commitment"

to pay him "full value," Defendant acted in derogation of its contractual duties to attempt to

avoid those commitments.  In violation of its obligation of good faith and fair dealing, Defendant

created a subterfuge claiming that Plaintiff's job was being eliminated as a result of a recent

reorganization, when in fact the new CEO's then-recent "Initial Action Plan" for April 23rd -

August 31st 2019 included Plaintiff in his Leadership team as Chief Business Development

Officer.

      20.     The Employment Contract provision for Termination Without Just Cause (§ 12.3)

reads as follows:

> PBT [Defendant] may terminate the Employee's [Plaintiff's] employment at any time without cause by providing Employee with a written prior notice of termination of employment equal to the lesser of (i) 12 months and (ii) the remaining duration of this Agreement. At PBT's absolute discretion, the prior notice period may be converted into a payment in lieu of such prior notice or a combination of prior notice or payment thereof. . . .

      21.     On May 3, 2019, Defendant abruptly sent Plaintiff a letter terminating him

without cause, effective immediately. This letter was sent without reference to the termination

provision of the Employment Contract requiring that termination without cause be preceded by

notice of the lesser of 12 months (meaning no earlier than May 3, 2020) or the remaining

duration of the Employment Contract (March 31, 2020), or payment in full as of March 31, 2020

in lieu of notice. In other words, Defendant was barred from terminating Plaintiff immediately

without making full payment of all amounts vested and/or due as of March 31, 2020, including

Plaintiff's long-term incentive rights.

      22.     Defendant's breach of the notice and/or payment provisions of the Employment

Contact also caused Plaintiff damages with respect to the $120,000 due under the confidential

program. Defendant claims that it owes Plaintiff only $40,000 of this amount because Defendant

prorated the total due to Plaintiff's involuntary termination. Because under the Employment

Agreement Defendant owes Plaintiff the full amount of compensation vested and/or due as of

March 31, 2020, Plaintiff is due the full $120,000.

      23.     In the May 3, 2019 termination letter referenced in paragraph 20 hereof,

Defendant represented that, "pursuant to the terms of your employment agreement, dated April

25, 2018, and of the Severance Pay Program to which you were participating," it would pay Plaintiff, *inter alia*, "$15,329.40, subject to regular taxes and withholdings, which is equivalent to the value of the premium for the health, dental, vision, life insurance and accidental death and dismemberment insurance for a period of ten (10 months)". To date, Defendant has not made this payment.

24.    Plaintiff has substantially performed under and complied with his obligations with respect to the contracts at issue.

25.    Plaintiff initially filed suit in New York state court. Defendant removed the action to federal court. Defendant moved to dismiss for lack of personal jurisdiction, asserting no New York contacts. In fact, Plaintiff's contract called for performance in respect of all Prometic entities, and Prometic has at least one facility in New York with employees, etc. that were not disclosed to the District Court in support of the motion. Because Defendant has not responded on the merits, and seems determined to use its resources to fight against its former employee and to try to outspend Plaintiff, Plaintiff now seeks the protection of this Court and of the Connecticut statutory regime designed for that purpose.

## COUNT ONE

### (Declaratory Judgment)

26.    Plaintiff repeats and realleges as if fully set forth herein all other paragraphs of this pleading except those alleged in this count.

27.    The Employment Agreement expressly states that, as applicable here, it cannot be terminated prior to its expiration date on March 31, 2020 without payment in full in lieu of notice.

28.    Defendant's termination letter, if in compliance with the Employment Contract, had the effect of requiring Defendant to make full payment to Plaintiff for all amounts that

6

vested and/or are due him as of March 31, 2020, including without limitation his long term

incentive grants and his payment under the confidential program

29.     A live case or controversy exists between Plaintiff and Defendant.  Plaintiff is

entitled to a judgment declaring that the effect of Defendant's May 3, 2019 termination letter is

that Defendant is obligated to Plaintiff for all amounts that vested and/or are due him as of

March 31, 2020, including without limitation his long term incentive grants valued at no less

than $1,150,000 and his $120,000 payment under the confidential program.

## COUNT TWO

### (Breach of Contract, Breach of the Obligation of Good Faith and Fair Dealing)

30.     Plaintiff repeats and realleges as if fully set forth herein all other paragraphs of

this pleading except those alleged in this count.

31.     The Employment Agreement expressly states that, as applicable here, it cannot be

terminated prior to its expiration date on March 31, 2020 unless full payment as of that date is

tendered.

32.     Accordingly, Plaintiff was entitled to notice followed by full payment, or full

payment of all amounts due as of March 31, 2020 in lieu of notice.

33.     Defendant breached the Employment Agreement by failing to give proper notice

and/or payment in lieu of notice.

34.     Defendant breached the Employment Agreement by failing to pay Plaintiff the

full value of his long-term incentive awards.

35.     Defendant breached its agreement under the confidential program to pay Plaintiff

the full $120,000 due as of January 2020.

36.     Up until virtually the date of Plaintiff's termination notice, Defendant had made

clear that Plaintiff was a valued employee, a member of the "core leadership team" whom it

7

planned to retain through the length of his contract.  Defendant breached the implied covenant of good faith and fair dealing by attempting to avoid the payment obligations it had agreed to, thus depriving Plaintiff of the full value of his contract.

37.     Plaintiff has been damaged by Defendant's actions.  Plaintiff is entitled to judgment against Defendant for breach of contract and breach of the obligation of good faith and fair dealing, awarding Plaintiff his damages of no less value than $1,150,000 as called for under the contracts at issue for breach of the "formal commitment" to award Plaintiff "full value" of his long term incentives and $120,000 for the breach of the confidential agreement, applicable interest, plus such other relief as is warranted under the circumstances.

## COUNT THREE

### (Unjust Enrichment, in the Alternative)

38.     Plaintiff repeats and realleges as if fully set forth herein all other paragraphs of this pleading except those alleged in this count.

39.     Even should it be determined that the Employment Agreement and/or the confidential program were not in effect, by depriving Plaintiff of his compensation, Defendant is being unjustly enriched at Plaintiff's expense.

40.     Plaintiff is entitled to judgment against Defendant for unjust enrichment, awarding Plaintiff his damages and applicable interest, plus such other relief as is warranted under the circumstances.

## COUNT FOUR

### (Breach of Contract)

41.     Plaintiff repeats and realleges as if fully set forth herein all other paragraphs of this pleading except those alleged in this count.

8

42.     Defendant has failed to pay Plaintiff $15,329.40, subject to regular taxes and withholdings, for insurance premiums as required under the terms of his Employment Agreement and/or Defendant's applicable severance pay program.

43.     Plaintiff sent a letter to Defendant dated June 13, 2019 asking when the payment would be made.  Defendant has made no answer.

44.     Defendant has breached its agreement by failing to make this payment to Plaintiff, and Plaintiff has been damaged by Defendant's actions.  Plaintiff is entitled to judgment against Defendant for breach of contract, awarding Plaintiff his damages of no less than $15,329.40, applicable interest, plus such other relief as is warranted under the circumstances.

## COUNT FIVE

### (Conn. Gen. Stat. § 31-72, Unpaid Wages and Benefits)

45.     Plaintiff repeats and realleges as if fully set forth herein all other paragraphs of this pleading except those alleged in this count.

46.     The Long-Term Incentive awards owed to Plaintiff, as described herein and that Defendant has refused and failed to pay Plaintiff, constitute "wages" as defined by Conn. Gen. Stat. § 31-71a(3) and/or other "fringe benefits" as referred to in Conn. Gen. Stat. § 31-76(k).

47.     The $120,000 payment owed to Plaintiff under the confidential program, as described herein and that Defendant has refused and failed to pay Plaintiff, constitutes "wages" as defined by Conn. Gen. Stat. § 31-71a(3) and/or other "fringe benefits" as referred to in Conn. Gen. Stat. § 31-76(k).

48.     The $15,329.40 insurance premium payment owed to Plaintiff as described herein and that Defendant has refused and failed to pay Plaintiff, constitutes "wages" as defined by Conn. Gen. Stat. § 31-71a(3) and/or other "fringe benefits" as referred to in Conn. Gen. Stat. § 31-76(k).

49.     To date, despite demand, Plaintiff has not been paid all of the compensation and benefits to which he is entitled.

50.     Defendants' failure to pay these wages and/or fringe benefits to which Plaintiff is entitled each constitute a violation of Conn. Gen. Stat. § 31-72, entitling Plaintiff to the payment of twice all sums due, plus costs and attorneys' fees.

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

A.     Declaring that the effect of Defendant's May 3, 2019 termination letter is that Defendant is obligated to Plaintiff for all amounts that vested and/or are due him as of March 31, 2020, including without limitation his long term incentive grants valued at no less than $1,150,000, his $120,000 payment under the confidential program, and his insurance premiums;

B.     Finding Defendants liable for breach of contract, and awarding Plaintiff his damages, plus applicable interest;

C.     Finding Defendant liable for breach of the duty of good faith and fair dealing, and awarding Plaintiff his damages, plus applicable interest;

D.     Finding Defendant liable in the alternative for unjust enrichment, and awarding Plaintiff his damages, plus applicable interest;

E.     Awarding Plaintiff statutory damages for twice the full amount of wages owed to Plaintiff, with costs and reasonable attorneys' fees pursuant to Conn. Gen. Stat. § 31-72; and

F.     Awarding Plaintiff his costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: Hartford, Connecticut
       July 29, 2019

                    O'TOOLE + O'TOOLE PLLC

                    By: /s/ Andrew D. O'Toole
                    Andrew D. O'Toole (CT-20016)
                    280 Trumbull Street,15th Floor
                    Hartford, CT 06103
                    (860) 519-5805
                    aotoole@otoolegroup.com

                    REED SMITH LLP

                    Louis M. Solomon (Pro Hac Vice To Be Filed)
                    Nancy L. Savitt (Pro Hac Vice To Be Filed)
                    599 Lexington Avenue
                    New York, New York 10022
                    (212) 521-5400
                    Lsolomon@reedsmith.com

                    *Attorneys for Plaintiff*